**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

```
ADAM HARTZELL,

                Plaintiff,          Civil No. 09-4256(NLH)

     v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL
SECURITY,                           OPINION
                Defendant.
```

**APPEARANCES:**

ALAN H. POLONSKY
POLONSKY AND POLONSKY
512 S WHITE HORSE PIKE
AUDUBON, NJ 08106

        *On behalf of Plaintiff*

ROBERT RANDOLPH SCHRIVER
SOCIAL SECURITY ADMINISTRATION
OFFICE OF GENERAL COUNSEL
26 FEDERAL PLAZA
ROOM 3904
NEW YORK, NY 10278

        *On behalf of Defendant*

**HILLMAN**, District Judge

        This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to review the final decision of the Commissioner of the Social Security Administration, denying the application of Plaintiff for Disability Insurance Benefits and Supplemental Security Income ("Social Security benefits") under Title II and Title XVI of the Social Security Act. 42 U.S.C. § 401, et seq.

The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that Plaintiff was not entitled to retroactive child insurance benefits dating back to his date of adoption in 1988.  For the reasons stated below, this Court will affirm that decision.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiff began living with his adoptive mother two days after his birth on April 16, 1987 and was legally adopted on May 13, 1988.  His mother had been awarded benefits in December 1978, and began receiving them retroactive to December 1977.  Although her son would have been entitled to child's benefits from as early as 1988, it was not until September 2005 that his mother became aware of the possibility that her son could receive child's benefits based on her disabled status.

On October 17, 2005, Plaintiff filed an application for child's insurance benefits.  He requested benefits dating back to his adoption date in 1988.  On December 27, 2005, the Commissioner approved Plaintiff's application, but pursuant to regulation only awarded Plaintiff one year of retroactive benefits.  That year of retroactive benefits was truncated to September 2004 through June 2005 because Plaintiff had turned 18 and graduated from high school as of June 2005.  Plaintiff was paid $6,122.00.

Plaintiff requested reconsideration of the Commissioner's

2

decision, arguing that he was entitled to benefits dating back to 1998 because the Commissioner had provided Plaintiff's mother with "misinformation."  The Commissioner denied Plaintiff's request.  Plaintiff requested a hearing, but because there was no factual dispute, the Plaintiff submitted a written argument to an ALJ in lieu of a hearing.  On May 8, 2007, the ALJ issued his decision denying Plaintiff's claim.  A request for review by the Appeals Council was filed on May 21, 2007, and that request was denied on July 28, 2009.  Plaintiff now seeks this Court's review.

## II.   DISCUSSION

### A.   Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for Disability Insurance Benefits.  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means more than "a mere scintilla."  Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).  It means "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." Id.  The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984). "[A] court must 'take into account whatever in the record fairly detracts from its weight.'"  Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).  In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."  Williams, 970 F.2d at 1182.  Apart from the substantial evidence inquiry, however, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards.  Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B.  Governing regulations**

Under the Social Security Act, a claimant must file a written application on a form prescribed by the Commissioner to

4

receive benefits.  42 U.S.C. § 402(a)(3); 20 C.F.R. § 404.603.
The Act further provides that a child's benefits may be paid for
up to 12 months immediately before the month in which the
application was filed. 42 U.S.C. § 402(j)(3); 20 C.F.R. §
404.621(a).  A person may be "deemed" to have filed an
application for benefits on an earlier date, however, if the
failure to apply was due to "misinformation" provided to such
person by any of the Commissioner's officers or employees that
related to the person eligibility for benefits.  20 C.F.R. §
404.633(a).  The regulations explain the requirements concerning
the misinformation:

> (1) The misinformation must have been provided to you
> by one of our employees while he or she was acting in
> his or her official capacity as our employee. For
> purposes of this section, an employee includes an
> officer of SSA.
>
> (2) Misinformation is information which we consider to
> be incorrect, misleading, or incomplete in view of the
> facts which you gave to the employee, or of which the
> employee was aware or should have been aware, regarding
> your particular circumstances, or the particular
> circumstances of the person referred to in paragraph
> (b)(2)(i) of this section.  In addition, for us to find
> that the information you received was incomplete, the
> employee must have failed to provide you with the
> appropriate, additional information which he or she
> would be required to provide in carrying out his or her
> official duties.
>
> (3) The misinformation may have been provided to you
> orally or in writing.
>
> (4) The misinformation must have been provided to you
> in response to a specific request by you to us for
> information about your eligibility for benefits or the
> eligibility for benefits of the person referred to in

paragraph (b)(2)(i) of this section for which you were
considering filing an application.

20 C.F.R. § 404.633(c).

   **C.  Analysis**

   The facts in this matter are mostly uncontested.  When
Plaintiff's mother applied for benefits for herself in 1978, she
was asked whether she had any children.  She did not, so she
answered "no."  During the next 25 years, in 1983, 1995, 2001,
and 2004, employees of the Social Security Administration
periodically contacted Plaintiff's mother to determine whether
she continued to meet the criteria upon which her original
benefits application was approved.[1]  Although she adopted her son
ten years after her initial application, she never informed SSA
employees of his adoption, and they never asked her if she had
since had any children.

   It was not until September 2005 that Plaintiff became aware
that her son might have been entitled to benefits dating back
many years.  As explained above, upon the SSA's approval of a
disability benefits application, a claimant is only eligible to
receive 12 months of retroactive benefits from the date of the
application, unless an exception to this rule applies.  Plaintiff
contended that the "misinformation" exception warranted the

---

   [1]Plaintiff's mother was rendered disabled due to the effects
of nasal pharynx cancer.

6

payment of all of the benefits he would have been entitled to had his mother applied for them in 1988.  The Commissioner rejected that argument, and awarded Plaintiff only one year of retroactive benefits.

In his appeal before the ALJ of the Commissioner's denial of his application to receive child's benefits dating back to 1988, Plaintiff did not claim that the misinformation his mother received was in response to any inquiry she affirmatively made to an SSA employee.  Instead, Plaintiff argued that the misinformation constituted the SSA's failure to provide her with information as to the availability of child's benefits because they should have known to ask her about any change in her family status.  If they had asked such a proper and meaningful question, she would have told them about her son, which would have then triggered their obligation to inform her about child's benefits.

The ALJ was not persuaded.  The ALJ noted the applicable provisions, and found that Plaintiff's mother was properly advised of her potential benefits.  (R. at 13.)  In making that determination, the ALJ "assumed" that because she was asked during the initial benefits application process in 1978 whether she had any children, she would have been informed then of the potential for child's benefits should she have a child in the

7

future.[2]  (Id.)  The ALJ also found that even if she was not so advised, she was provided with a pamphlet with her award letter that contained information regarding child's benefits.[3]  (Id.)

On appeal to this Court, Plaintiff argues that the ALJ erred in two ways.  First, Plaintiff argues that the ALJ did not address his argument regarding the interpretation of the regulations and the legal term "misinformation."  Second, Plaintiff argues that the ALJ's decision was not based on substantial evidence because his assumptions about what Plaintiff's mother was told in 1978 about child's benefits, and whether she received a pamphlet, were unsupported in the record.

This Court agrees with Plaintiff to the extent that the

---

[2]Plaintiff disputes she was ever informed about potential child's benefits.  Although this Court cannot make any factual or credibility determinations, such testimony would not be inconsistent with this Court's interpretation of the regulations, explained below, that the SSA has no affirmative, unsolicited duty to inform all claimants about every possible basis for additional benefits in the future.  Although it would be reasonable to presume many women become mothers at some point in their lives, without an act of Congress or implementing regulation commanding as much, it is not currently the obligation of the SSA to conduct a yearly survey of every woman who is receiving benefits to determine if they now have a child who may also be entitled to benefits.  Under that logic, the same would have to be done for every person receiving benefits for every possible qualifying disability.  The regulations do not require the SSA to affirmatively undertake such an inquiry.

[3]The ALJ also discussed the courts' disfavor of applying estoppel principles to the federal government when it is acting in its sovereign capacity.  (R. at 13, citing Heckler v. Comm. Health Servs of Crawford County, Inc., 467 U.S. 51, 60 (1984).)

ALJ's assumptions to support his conclusion that Plaintiff's mother was properly advised of potential benefits, and therefore did not receive misinformation, are weak and do not address the dispositive legal question concerning the interpretation of "misinformation."  The Court, however, finds--for several reasons--that the ALJ's ultimate conclusion to limit Plaintiff to one year of retroactive benefits from the date of his application is correct.

First, Plaintiff's contention that the SSA has an affirmative duty to provide unsolicited information to benefits recipients about additional benefits opportunities is not supported by the regulations.  The regulations consistently define "misinformation" in the context of information that the SSA employees affirmatively provide to a potential claimant in response to an inquiry by that potential claimant: "It is possible that in responding to your inquiry, we may have given you misinformation"; "Preferred evidence is written evidence which relates directly to your inquiry about your eligibility for benefits or the eligibility of another person and which shows that we gave you misinformation which caused you not to file an application"; "The misinformation must have been provided to you in response to a specific request."  20 C.F.R. § 404.633; see also § 404.633, Example 1 and Example 2 ("Mrs. Smith, a widow of an insured individual, contacts a Social Security office when she

reaches age 60 to inquire about applying for widow's insurance
benefits.  She is told by an SSA employee . . . .";  "Ms. Hill, a
22-year-old, is forced to stop work because of illness.  When she
contacts a Social Security office to inquire about applying for
disability insurance benefits, she is told by an SSA employee . .
. .").  The term "misinformation" is never described in the
context of the SSA's obligation to seek out potential claimants
and provide gratuitous information regarding possible benefits.

Second, Plaintiff's contention that SSA employees should
have asked his mother about whether her family status had changed
during their periodic check-ins is not supported by the
regulations.  To support this proposition, Plaintiff points to
the following language in the regulations:

> Misinformation is information which we consider to be
> incorrect, misleading, or incomplete in view of the
> facts which you gave to the employee, or of which the
> employee was aware or should have been aware, regarding
> your particular circumstances, or the particular
> circumstances of the person referred to in paragraph
> (b)(2)(i) of this section. In addition, for us to find
> that the information you received was incomplete, the
> employee must have failed to provide you with the
> appropriate, additional information which he or she
> would be required to provide in carrying out his or her
> official duties.

20 C.F.R. § 404.633(c)(2).  Plaintiff argues that his mother did
not receive complete information because the SSA employees were
"aware or should have been aware" of the need to ask updates
about whether she had a child since her initial application.  In
other words, Plaintiff argues that his mother received incomplete

10

information because she was not asked about children, and, accordingly, she was not told about benefits for any children, which constitutes misinformation.  This argument strains the plain language of the regulation.

As just explained, the regulations contemplate that the SSA employees provide information--correct, incorrect, or incomplete--to a claimant at the request of that claimant in the quest for benefits.  Plaintiff's mother was already receiving benefits, and Plaintiff has not shown any regulation requiring the SSA employees to do more than confirm that she still met the criteria upon which her benefits were awarded.  Plaintiff has also not demonstrated that her status as a mother would have had an impact on that determination.  Further, that provision cannot be interpreted to mean that any time a potential claimant or SSA employee fails to ask a question, the SSA can be found to have provided "incomplete" misinformation.[4]

The Court is sympathetic to Plaintiff's situation.  As a child, it was impossible for Plaintiff to apply for child's benefits for himself.  With regard to Plaintiff's mother, even

---

[4]Plaintiff posits that it should be the standard practice of the SSA to ask a person receiving benefits questions pertaining to changed family circumstances, and not only questions relating to her disability.  Such questions would make sense, because, for example, getting married or divorced often affects benefits. Although the Court agrees with the common sense basis for such a procedure, it is not for this Court, or the ALJ, to mandate such a procedure, or find that the SSA employees handling Plaintiff's mother's case file violated the regulations by not doing so.

though she was asked if she had any children when she applied for benefits, her application was processed ten years before she adopted her son.  Unfortunately, for the 17 or so years following her son's adoption, Plaintiff's mother never recalled that question asked of her during the initial application process (or realized its relevance), she never thought to mention her son's adoption to the SSA employees who periodically checked-in to confirm her continued disabled status, and she was never alerted fortuitously to the possibility of benefits for her son so that she could raise the issue with an SSA employee.[5]

In short, Plaintiff's mother never informed any SSA employee about her son, and aside from her initial application process, no SSA employee thereafter inquired as to whether Plaintiff had any children.  The circumstances of this case are unfortunate, but Plaintiff has not shown how the SSA failed to abide by the regulations, or that the Commissioner was not reasonable in finding that Plaintiff was only entitled to one year of retroactive benefits rather than almost 18 years of benefits. Although in affirming the Commissioner's decision the ALJ veered slightly off course in his assessment that Plaintiff's mother had been properly advised of the availability of child's benefits,

----

[5]It was finally through such a fortuitous conversation with her sister in September 2005 regarding her sister's friend, who had been found eligible for disability benefits for herself and her child, that Plaintiff's mother discovered that her son may have also been entitled to benefits.

12

the ALJ's decision must still be affirmed as to his legal conclusion that the SSA regulations do not support Plaintiff's interpretation. <u>See</u> <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 553 (3d Cir. 2005) (explaining that remand is not required when it would not affect the outcome of the case); <u>Sykes v. Apfel</u>, 228 F.3d 259, 262 (3d Cir. 2000) (explaining that the court exercises plenary review over the Commissioner's legal conclusions).

## III. Conclusion

There are numerous ways a person could qualify for Social Security benefits, and the regulations are complex.  The Commissioner has an obligation to provide accurate information when a person contacts the SSA office to inquire about the possibility of applying for benefits, and the regulations recognize that a qualified individual should not be penalized by the denial of benefits when an SSA employee improperly counseled her.  Moreover, the Commissioner has a duty to ensure that those people who receive benefits remain qualified for those benefits.

Nonetheless, plaintiff has not pointed out to us, nor have we found, anything in the relevant statutes, implementing regulations, or case law, that supports the notion that the Commissioner has an independent duty to seek out those who have not inquired about available benefits, or to review the benefits of a disabled person to determine whether she is entitled to other benefits beyond her original application.  Indeed, many

13

people may be qualified for Social Security benefits, but do not wish to apply for them, or otherwise let them lapse.  Whether a higher, or more proactive administrative duty should exist, is a question of policy and it is therefore for Congress by statute, or the relevant agency by proper regulation, and not this Court to impose it.  Accordingly, the ALJ's determination that Plaintiff is only entitled to one year of retroactive child's benefits must be affirmed.   An accompanying Order will be issued.


Date: September 28, 2010                   s/ Noel L. Hillman
                                   NOEL L. HILLMAN, U.S.D.J.

At Camden, New Jersey

14